## HOLMES *vs.* HOLMES.

1. Upon exceptions to a master's report on a question of fact, the court will come to a conclusion upon the evidence, irrespective of the master's opinion. The report is not entitled to the same weight as the verdict of a jury, upon a motion for a new trial in a court of law.

2. The report of a master upon a question of fact will not be overruled, although the evidence on which it is founded is vague, and not altogether satisfactory, if it does not appear that his conclusion was unwarranted by the evidence.

This matter came up on exceptions by the complainants, to the report of the master, made upon an interlocutory decree heretofore taken in the cause.

*Mr. S. A. Allen*, for exceptants.

*Mr. Browning*, for defendant.

THE CHANCELLOR.

The bill in this case was filed by the complainants, Sarah C. Holmes and her three daughters, against her son, John Holmes, for an account. The account asked was chiefly for the proceeds of the sale of wood and timber standing on lands of which Josiah Holmes, the husband of Sarah, and the father of John, died seized, and for the rent of those lands. Josiah Holmes died on the 26th of July, 1861, intestate.

The principal matters in controversy were settled by an interlocutory decree, made on the 24th of May, 1865, by agreement between the parties at the argument of the cause, on suggestion of the Chancellor.

That decree directed a reference to a master to state the

accounts between the parties, and settled to a great extent, the principles on which they were to be stated.

To the report of the master the complainants excepted, and the cause is before me on the hearing of those exceptions.

Only two of the exceptions, the first and third, were seriously urged upon the argument, and I have no hesitation in overruling all the others.

The order of reference directed the master to charge the defendant, as rent for the house and farm occupied by him, four hundred dollars per annum, for the three years ending on the 25th days of March, 1862, 1863, and 1864, respectively, and five hundred dollars for the year ending on that day, in 1865. But he was directed to ascertain and report whether these rents, assumed to have been agreed upon between the parties for those years, were understood and intended by them to be the whole rental value of the farm, or the rent for the estates of the complainants therein. The master reports that it was for the whole rental value, to which complainants except.

Josiah Holmes left five children; three daughters, Elizabeth, Anna, and Louisa, who are complainants; and two sons, the defendant, and Josiah R. Holmes.

Josiah, the son, on the 14th of May, 1863, conveyed his one fifth of the estate of his father to the defendant, his mother having first released to him her dower therein, for an annuity secured to her.

Between parties so situated, it is evident that this exception depends upon a question of facts only.

Did the master arrive at a correct conclusion from the evidence? To determine this, it is necessary to review and weigh the evidence. For this reason the master's report is entitled to no special consideration beyond the soundness of his reasoning, and the advantage of seeing the demeanor of the witnesses while examined, which is of importance in judging of their credibility, when they contradict each other. But the report has not the position of a verdict, on a motion for

a new trial in courts of law.    That will not be set aside merely because the court would have come to a different conclusion from the evidence.

The testimony on this point is painfully conflicting, and the master reports that, upon the conflicting testimony, and the restraining character of the order, he had difficulty in determining it to his satisfaction.    I have felt the same difficulty, but upon mature consideration, have arrived at a result entirely satisfactory to me, but different from that reached by the master.

In the first place, the number of the witnesses who swear that the sums fixed were to be the rents of the complainants' estate in the property, is greater than that of the witnesses who swear that it was for the whole.    The four complainants and Josiah R. Holmes, all testify to that understanding as to the time, after the first year.    Josiah expressly swears to it. They are contradicted by John, the defendant, and also, seemingly, by Crawley, the surveyor, as to the rent for the last year.

The three daughters and the defendant are alike interested. Their testimony is legal, and must be received with due regard to their interest.    The testimony of the daughters is somewhat affected by positive discrepancies between their two examinations, and by omissions in the first supplied in the last.

The testimony of John is affected by the fact that he is contradicted uniformly by all the complainants, and by Josiah, as to the fact whether there was any agreement at all to pay rent in 1862; a fact settled against him by the interlocutory decree.

The testimony of Sarah and Josiah is not affected by interest.    And all agree that for 1862 the agreement was, that the rent of four hundred dollars was for the complainants' estate only.    Crawley's evidence is confined to the last year, for which a lease was drawn by him.    This would not affect the preceding two years, except that there is a great probability that the understanding for all three years was the same on this point.

But Crawley's testimony is not clear or positive. He drew the lease mainly from John's dictation; and he says, in general terms the understanding was as he relates, but he does not say from whom he derived that understanding, or that any thing was said about it, by or in the presence of any of the complainants. He may have had that understanding and not recollect, as he surely does not tell, from whom he got it. He is evidently mistaken as to the main part of the lease being filled up in the presence, and at the dictation of Mrs. Holmes.

The color of the ink plainly shows that the whole was filled up with dark ink, except the signatures and two inter-lineations, written in pale ink. The first interlineation, which is a significant one, provides that John should pay for two-fifths of the seed; the second that he should make certain repairs. As Crawley may have got his understanding from John, his testimony as to it can have but little weight.

But the interlineation as to the seed must have weight. If John was to receive his share of the rent, like his sisters, the "landlord" should have paid John's share of the seed out of the rent which was to be paid to her for him and them. And he should not have been required to pay a second time for two-fifths of the seed.

But if the rent was for the three-fifths owned by his sisters, then they should pay out of it that proportion of the seed, and he for the other two-fifths, it being for the benefit of their estates in that proportion.

The fact that this change was made by interlineation in the lease, upon discussion, is strong evidence in favor of the complainants on this point. The other interlineation is a provision against John, no doubt inserted at the instance of the complainants, or some of them.

Again, the widow was in possession of the farm by right of quarantine. No one else was entitled to rent it, and all parties so understood. She acted for herself and her daughters, who had no other livelihood. She bargained with an active son, of mature age, able to take care of himself, and settled,

on consultation with her daughters, what sum was to be paid for the farm, in a bargain by which he was to have everything raised on it. In this situation, it is not probable that he would agree to pay to his mother a rent, of which two-fifths, or any other share, was to be repaid to him; he would bargain to pay just the sum that they were to receive and retain. And if otherwise, pains would have been taken to have it understood that he was not to pay the whole sum stipulated, in a way that could not have been forgotten by any one.

But these reasons do not apply to the rent for the first year. The agreement for that year, was with his father for the rent of the whole farm. As regards the rent for the second, third, and fourth years, I consider the first exception well taken. The account must be referred back to the master to be re-stated, on the assumption that the rent for three years was for the estates of the complainants only.

As to the item of one hundred dollars, received by the defendant for goods sold by him, which is the basis of the third exception, the testimony is vague and contradictory; and as I cannot arrive at any satisfactory conclusion different from that of the report, I shall overrule the exception.